UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TERELL DAVIS,

                Plaintiff,

      -against-

NAVADA'S BAR AND LOUNGE, LLC,
*d/b/a Mo's Bar & Lounge* and CALVIN
CLARK,

                Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22 CV 4176 (LDH) (CLP)

**POLLAK**, United States Magistrate Judge:

      On July 15, 2022, plaintiff Terell Davis ("Mr. Davis" or "plaintiff") commenced this action against defendants Navada's Bar & Lounge, LLC d/b/a Mo's Bar & Lounge ("Mo's Bar") and Calvin Clark ("Mr. Clark" and, collectively with Mo's Bar, the "defendants"), seeking unpaid overtime wages and spread of hour compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL") §§ 190 *et seq.* and §§ 650 *et seq.*, the New York Business Corporation Law ("NYBCL") § 630, and related regulations, *e.g.*, 12 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 142-2.4. (See Compl.[1] ¶ 1). Plaintiff also seeks damages for defendants' violations of the New York State Human Rights Law ("NYSHRL"), Exec. Law §§ 296 *et. seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et. seq.* (Compl. ¶ 2).

      Currently before the Court is plaintiff's motion for default judgment and for attorney's fees and costs, filed on March 23, 2023, and referred to the undersigned by the district court (the "Motion"). (ECF No. 14). After reviewing plaintiff's submissions, and for the reasons set forth below, the Court respectfully recommends that the district court: (1) grant the Motion with

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed July 15, 2022. (ECF No. 1).

respect to liability for plaintiff's overtime wage claims, NYBCL personal liability claim, NYSHRL claims, and NYCHRL claims; (2) deny the Motion with respect to liability for plaintiff's spread-of-hours claims, wage statement claims, and wage notice claims; and (3) deny the Motion with respect to all damages, without prejudice and with leave to renew.

<u>FACTUAL BACKGROUND</u>

I.    <u>The Complaint</u>

Plaintiff asserts claims for (1) violations of the FLSA and NYLL overtime compensation requirements (First and Second Causes of Action); (2) violations of the NYLL's notice, recordkeeping, and wage statement provisions (Third and Fourth Causes of Action); (3) individual liability on the part of Mr. Clark under NYBCL § 630 (Fifth Cause of Action); and (4) *quid pro quo* sexual harassment, hostile work environment, and retaliation under the NYSHRL and NYCHRL (Sixth through Eleventh Causes of Action).  (Compl. ¶¶ 60–145).  Plaintiff's Motion seeks damages in the form of unpaid overtime and spread-of-hours compensation, statutory penalties, liquidated damages, back and front pay, emotional distress damages, punitive damages, and pre- and post-judgment interest.  (Pl.'s Mem.[2] at 18–26).

II.    <u>The Parties</u>

Plaintiff is a resident of Kings County, N.Y., and was employed by the defendants as a barback at Mo's Bar from approximately August 2021 to on or about June 3, 2022, when he alleges he was unlawfully terminated.  (Compl. ¶¶ 22, 30; Pl.'s Mem. at 3, 5).  Mo's Bar is a domestic corporation organized under New York state law, with its principal place of business at 80 Lafayette Ave, Brooklyn, NY 11217.  (Compl. ¶ 5).  During the relevant period, Mo's Bar allegedly had employees engaged in interstate commerce, and had an annual gross volume of

---

[2] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of Motion for Default Judgment, filed March 23, 2023.  (ECF No. 15).

sales not less than $500,000.00.  (Id. ¶ 6).  Mr. Clark is alleged to be the owner of Mo's Bar and

to be a covered employer under the FLSA and the NYLL.  (Id. ¶¶ 11–13).

Jeffrey Clemente, the manager of Mo's Bar and not a party to this action, first hired

plaintiff weeks after plaintiff was released from prison on parole.  (Id. ¶ 47).  Plaintiff alleges

that at all times relevant to this action, however, Mr. Clark was responsible for hiring and firing

employees of Mo's Bar and for managing the "day-to-day operations" of Mo's Bar.  (Id. ¶¶ 15,

17).  Within the same period, Mr. Clark allegedly had the power to determine employee policies,

including decisions regarding payroll, payment policy, and compensation practices.  (Id. ¶¶ 16,

18).  Plaintiff also alleges that Mr. Clark had the power to stop any illegal pay practices and/or

discriminatory employment practices that harmed plaintiff during the relevant period.  (Id.

¶¶ 19–20).

III.    Alleged Wage and Hour Violations

Plaintiff alleges that during the relevant period of employment, he regularly worked in

excess of 40 hours per week, and that he and other employees were often required to work shifts

lasting upwards of 11 to 12 hours, with their shifts running until 5:00 or 6:00 a.m. on some

occasions.  (Id. ¶¶ 22, 30, 32–33).  Plaintiff alleges that during the first two months of his

employment, he regularly worked upwards of 70 hours per week, and thereafter worked

approximately 45 to 50 hours per week.  (Id. ¶ 34).  Plaintiff alleges that he was also required to

work off the clock before and after his shifts, resulting in an additional four or five hours of

unpaid overtime work per week.  (Id. ¶ 35).  Plaintiff also alleges that he would visit Mo's Bar

on some of his off days, and that he regularly worked "for several hours at a time" on those days

without any pay.  (Id. ¶ 36).

Plaintiff alleges that he was never compensated for work in excess of 40 hours per week. (Compl. ¶¶ 37–40, 60–70). Additionally, plaintiff maintains that the defendants did not maintain proper employment records or provide wage statements or wage notices. (Id. ¶¶ 41, 43–44).

IV.   Alleged Gender Discrimination, Sexual Harassment, and Retaliation

Plaintiff alleges that throughout his employment at Mo's Bar, Clark repeatedly subjected plaintiff to "unwanted touching and comments of a sexual nature." (Id. ¶ 47). Specifically, plaintiff was subject to various comments of a sexual nature and was forced to touch Clark's buttocks while Clark made sexual comments. (Id. ¶¶ 49–51). Plaintiff alleges that once he started to rebuff Clark's conduct, Clark began to retaliate against him by criticizing him for minor issues, directing him to engage in work that was not included in his usual duties, and, ultimately, abruptly terminating his employment. (Id. ¶¶ 53–59; see also Pl.'s Mem. at 4–5, 15).

PROCEDURAL HISTORY

The defendants were served on August 17, 2022. (ECF Nos. 8–9). Neither defendant answered or otherwise responded to the Complaint, and on December 6, 2022, the Clerk of Court entered a default against both defendants. (ECF No. 13). Plaintiff thereafter filed his Motion for Default Judgment.

In support of his Motion, plaintiff filed his Memorandum of Law, an affidavit by Mr. Davis ("Davis Aff.") (ECF No. 14-2), a declaration by plaintiff's counsel, Mr. Jordan Harlow ("Harlow Decl.") (ECF No. 14-3), and a damages chart ("Dam. Chart") (ECF No. 14-8).[3] In support of his counsel's application for attorney's fees and costs, plaintiff also attached a copy of

---

[3] Plaintiff also attached a copy of the summons and Complaint (ECF No. 14-4), a copy of the certificate of default judgment (ECF No. 14-6), and copies of the relevant affidavits of service (ECF Nos. 14-5, 14-11).

Mr. Harlow's billing records (ECF No. 14-9) and receipts showing the expenses for which Mr. Harlow seeks reimbursement (ECF No. 14-10).[4]

The Honorable LaShann DeArcy Hall, United States District Judge, referred the Motion to the undersigned. (Electronic Order, dated April 5, 2023). On January 2, 2024, this Court issued an Order setting an inquest hearing for February 14, 2024, and instructed defendants to submit any papers in response to plaintiff's motion for default judgment on or before February 1, 2024. (ECF No. 16). Plaintiff served a copy of that Order on the defendants on January 8, 2024 (ECF No. 19). Defendants failed to make any filing by the stated deadline and failed to appear at the inquest hearing. (See Minute Entry, dated February 12, 2024).

<u>DEFAULT JUDGMENT</u>

The Court first addresses the question of whether default judgment should enter against the defendants as to some or all of plaintiff's claims. In other words, the Court must determine whether the allegations contained in the Complaint, taken as true for purposes of a motion for default judgment, establish liability on the part of the defendants for the conduct complained of in the Complaint. As described in detail below, the Court concludes that default judgment is appropriate as to plaintiff's overtime and NYBCL claims, as well as his NYSHRL and NYCHRL claims, but not as to plaintiff's spread-of-hours claims, wage statement claims, or wage notice claims.

I.  <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ.

---

[4] Plaintiff purportedly served a copy of the Motion and supporting papers on defendants on March 23, 2023. (See ECF No. 14-11).

P. 55(a).  Rule 55 sets forth a two-part procedure for entering a default judgment.  First, the Clerk of Court enters a default by noting the defaulting party's failure to respond or appear.  Fed. R. Civ. P. 55(a).  Second, if the defaulting party fails to vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment to establish liability and, if proven, damages.  Fed R. Civ. P. 55(b).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort."  Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).[5]  While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Circuit instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993); see also Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023).  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").  Furthermore, "[Rule 55(b)]

---

[5] Unless noted, caselaw quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. at 162.  Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because the defendant is in default.  See, e.g., id.

Courts have significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including:

1)  Whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings");

2)  "[W]hether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *2 (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. 1992)); and

3)  "[T]he amount of money potentially involved.  The more money involved, the less justification for entering the default judgment."  Id.

When a defendant defaults, the defendant is typically deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  However, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action."  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.  In either event, the Court must review the allegations in the Complaint and/or factual averments to determine if the elements of each claim have been adequately pleaded.  See id.; Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (adopting report and recommendation and explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide

a proper basis for liability and relief").  Moreover, the Court may, in deciding whether to grant default judgment, consider whether there are unresolved questions regarding material issues of fact as to liability, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2685 (4th ed. 2023) (discussing the aforementioned factors).

## II.    Default

Before turning to the question of whether plaintiff has adequately pleaded some or all of his claims against the defendants such that default judgment may properly be entered against them, the Court addresses whether defendants in fact defaulted.

Defendants were properly served process via substitute service on August 17, 2022, and were served with all other papers in a manner consistent with Rule 55.2(c) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules").  (Pl.'s Mem. at 5–7; see also ECF Nos. 8, 9, 14-11, 19).  Despite the numerous opportunities afforded to defendants, they have neither contested default nor appeared in this action.  Indeed, defendants failed to respond to the Court's inquest order or appear at the inquest hearing, both of which afforded them an additional opportunity to challenge the Clerk's entry of default and/or contest the appropriate measure of damages.  (See ECF Nos. 16, 18, 19; Minute Entry, dated February 12, 2024).  It is therefore beyond dispute that defendants are in default.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for a default judgment).

## III.   Adequacy of Pleadings

Before recommending that the district court enter default judgment as to some or all of plaintiff's claims, the Court is obligated to review the allegations in the Complaint and confirm

that each of the elements of plaintiff's claims have been adequately pleaded.  See Rolls-Royce

PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d at 153.  In doing so, the Court accepts plaintiff's

factual allegations as true.  See id.; Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997,

at *3.

       A.     FLSA Overtime Claims

The FLSA provides that "no employer shall employ any of his [covered] employees . . .

for a workweek longer than forty hours unless such employee receives compensation for his

employment in excess of the hours above specified at a rate not less than one and one-half times

the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Overtime is calculated at a

rate of one and one-half times the employee's regular hourly pay for work performed in excess

of 40 hours per week.  Id.

To establish a claim under the FLSA, a plaintiff must prove four elements:

    1)  That the defendant failed to pay the mandated overtime wage;

    2)  That the defendant is a covered employer under either the
         "individual coverage" theory or the "enterprise coverage"
         theory;

    3)  That plaintiff is an "employee" within the meaning of the
         FLSA; and

    4)  That the employment relationship is not one that is exempted
         from the FLSA.

See id.; Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1,

2023); Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing

Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985)).  Accepting the

allegations in the Complaint as true, the Court concludes that plaintiff has satisfied each of those

elements.

1.  Underpayments

Plaintiff alleges that during his period of employment with the defendants, he was only ever paid for 40 hours of work per week despite working between 45 and 70 hours per week. (Compl. ¶¶ 22, 30, 32–34, 37–40, 60–70).   Plaintiff also alleges that he was also required to work off the clock before and after his shifts, resulting in an additional four or five hours of unpaid overtime work per week.  (Id. ¶ 35).  Accepting those allegations as true, the Court concludes that plaintiff was not adequately compensated for hours worked in excess of 40 hours per week.

2.  Covered Employer

For purposes of determining employer status under the "Enterprise Coverage" theory, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

"[L]iability under the FLSA extends to any 'employer'" once the plaintiff has established individual or enterprise coverage.  Gordon v. General Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 836 (S.D.N.Y. 2020) (quoting 29 U.S.C. § 216(b)).  The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  Id. § 203(d).[6]  "[W]hether there is an employer-employee relationship between an

---

[6] "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).

individual defendant and an FLSA plaintiff" under that definition of employer depends, at least in substantial part, upon "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir.1984))

Plaintiff alleges that he worked for Mo's Bar between August of 2021 and approximately June 3, 2022. (Compl. ¶¶ 22, 30). He also alleges that Mo's Bar was and continues to be a covered employer as defined under the FLSA, and specifically that defendants had an annual gross volume of sales in excess of $500,000, and that defendants were engaged in interstate commerce. (Pls. Mem. at 8–9 (citing Compl. ¶¶ 6–8)). In support of that allegation, plaintiff states that defendants "regularly provided alcoholic beverages from manufacturers and suppliers outside of New York." (Id. at 9 (citing Davis Aff. ¶ 3)). For purposes of a default judgment motion, that is sufficient to establish that Mo's Bar is a covered employer under the enterprise coverage theory. See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 33 (stating that it was "reasonable to infer" that a "Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales" utilized a "wide variety of materials to operate," at least some of which were likely "moved or were produced in interstate commerce").

With respect to Mr. Clark's employer status, plaintiff alleges that at all times relevant to this action, Mr. Clark was the owner of Mo's Bar and was responsible for hiring and firing employees and for managing the bar's "day-to-day operations." (Compl. ¶¶ 11–13, 15, 17). Plaintiff alleges that within the same period, Mr. Clark controlled employee policies, including decisions regarding payroll, payment policy, and compensation practices. (Id. ¶¶ 16, 18). In the

context of this Motion, where defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true. Thus, the Court finds that Mo's Bar is an "enterprise engaged in commerce or in the production of goods for commerce," and that Mr. Clark is also an "employer" as defined by the FLSA.

### 3.    Non-exempt Employee Status

Finally, the Court turns to the third and fourth elements of an FLSA overtime claim. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); see also Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).

The Complaint alleges that plaintiff was employed by defendants, who, as noted above, qualify as "employers" within the meaning of the FLSA. Moreover, there is nothing to suggest any basis for exempting the employment relationship at issue from the FLSA's provisions. See 29 U.S.C. § 213(a) (setting forth the exemptions from the minimum wage requirements). The court therefore concludes that, at least for purposes of a default judgment motion, plaintiff has adequately pleaded the third and fourth elements of an FLSA overtime claim.

### B.    NYLL Overtime and Spread of Hour Claims

Plaintiff also alleges that defendants violated the NYLL's overtime wage and spread of hours provisions. Like the FLSA, the NYLL requires that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of 40 hours in a week. See NYLL § 663; 12 N.Y.C.R.R. § 146-1.4. The elements of an NYLL overtime wage claim largely mirror those of an FLSA overtime wage claim. The NYLL also

provides that covered employees are entitled to an additional hour's pay at the basic minimum

hourly wage rate for any day worked during which the "spread of hours"—*i.e.*, "the interval

between the beginning and end of an employee's workday," 12 N.Y.C.R.R. § 142-2.18—exceeds

10 hours, id. § 142-2.4.

### 1.   Coverage and Underpayments

To recover under the NYLL, the plaintiff must prove that he or she is an "employee"

entitled to NYLL's protections and that the defendant is an "employer" as defined by the statute.

See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–09 (E.D.N.Y. 2009).  The NYLL's definition

of "employer" mirrors that of the FLSA, with the exception that the NYLL has no gross sales or

interstate commerce requirement.  See NYLL § 651(6); Singh v. Mowla, No. 19 CV 4687, 2022

WL 17820099, at *8, n.8 (E.D.N.Y. Sept. 30, 2022).  Similarly, an "employee" is simply

defined, in part, as "any individual employed or permitted to work by an employer in any

occupation."  NYLL § 651(5).

For the same reasons noted above with respect to plaintiff's FLSA claims, the Court

concludes that (1) plaintiff has adequately alleged underpayment for overtime hours; (2) plaintiff

fits within the definition of "employee"; and (3) defendants satisfy the definition of "employer"

under the NYLL.  Furthermore, there does not appear to be any exception to the definition of

"employee" that applies in this case.

### 2.   Spread of Hours

Once coverage has been established, as here, a plaintiff asserting a spread-of-hours claim

need only show that he worked in excess of ten hours per day for one or more days without

adequate compensation.  See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339

(S.D.N.Y. 2005).  In his Motion papers, plaintiff claims that he "regularly worked upwards of 11

to 12 hours per shift," and that his daily wages did not account for the spread-of-hours

compensation to which he was entitled under the NYLL.  (Pl.'s Mem. at 10; see also Davis Aff. ¶ 13).  However, the complaint does not allege a claim for unpaid spread-of-hours compensation, and plaintiff cannot seek to include said claim *ex post* in a motion for default judgment.  Fed. R. Civ. P. 54(d).[7]  The Court therefore recommends that the district court deny plaintiff's motion with respect to spread of hours compensation.

C.    NYLL Wage Statement and Notice Claims

Under the NYLL's notice and wage statement provisions—known collectively as the "Wage Theft Prevention Act" or "WTPA"—employers are required to give each employee a notice of their rate of pay at the time of hiring and a wage statement listing specific information with each paycheck.  NYLL § 195(1)(a), (3).  The notice must contain the rate or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number in both English and the employee's primary language, if different from English.  Id. § 195(1)(a).  The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances.  Id. § 195(3).

A plaintiff may recover $50 for each workday during which the employer failed to provide the required notice, not to exceed $5,000.  Id. § 198(1-b); see also Cabrera v. 1560 Chirp Corp., No. 15 CV 8194, 2017 WL 1289349, at *7 (S.D.N.Y. Mar. 6, 2017) (describing the WTPA's amendments to NYLL § 198(1-b)).  If an employer fails to provide an employee with a

---

[7] Plaintiff was informed of this deficiency during the inquest hearing, and he opted not to amend his complaint to include the claims.  (See ECF No. 21).

pay stub, or with a pay stub containing the necessary wage statement, the employee may recover $250 for each workday for which the employer failed to provide the statement, up to a total of $5,000.  Id. § 198(1-d); see also Cabrera v. 1560 Chirp Corp., 2017 WL 1289349, at *6 (describing the WTPA's amendments to NYLL § 198(1-d)).

Recently, the Supreme Court explained in TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021), that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  The Supreme Court clarified that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 427.  Courts in this Circuit, applying TransUnion LLC v. Ramirez to the wage statement and wage notice provisions of the NYLL, have since required plaintiffs to identify the harm caused to them by these violations— i.e., to allege and ultimately prove that they suffered a specific injury as a result of defendants' noncompliance with the notice and wage statement provisions—and have concluded that a statutory violation alone is insufficient.  Compare Stih v. Rockaway Farmers Market, Inc., No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (finding plaintiff pleaded a sufficient injury flowing from defendants' alleged violations of the NYLL wage statement and notice provisions where plaintiff alleged that the noncompliance "caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment"), with Francisco v. NY Tex. Care, Inc., No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar 28, 2022) (declining to certify a class action based on the defendants' alleged improper wage statement and notice policies because the plaintiff did not demonstrate, either in

the pleadings or the record, a tangible injury or close parallel to a traditional cause of action sufficient to establish standing to bring those claims).[8]

In the instant case, plaintiff merely alleged that he was not provided with the requisite notice and wage statements.  He has not alleged any specific harm which flowed from defendants' noncompliance with the NYLL provisions, and therefore has not demonstrated his standing to bring these claims.  In the absence of allegations that, if true, would establish such standing, the Court cannot conclude that plaintiff has adequately pleaded his wage statement and notice claims.  Accordingly, the Court respectfully recommends that the district court deny the Motion with respect to those claims.[9]

D.    NYBCL Claims

Under New York law, a non-public corporation's ten largest shareholders are personally liable for "all debts, wages or salaries due and owing to any of its laborers, servants or employees . . . for services performed by them for such corporation."  NYBCL § 630(a).  For these purposes, "wages or salaries" means "all compensation and benefits payable by an employer to or for the account of the employee for personal services rendered by such employee," including but not limited to "salaries" and "overtime."  Id. § 630(b).  A plaintiff may

---

[8] See also Ramirez v. Urion Constr. LLC, No. 22 CV 3342, 2023 WL 3570347, at *5 (S.D.N.Y. Apr. 28, 2023) (declining to award statutory damages and dismissing NYLL wage statement and notice claims on motion for default judgment due to lack of standing for failing to allege a concrete, fairly traceable injury), report and recommendation adopted, 2023 WL 3570639 (S.D.N.Y. May 19, 2023); Belliard v. Tarnovsky, No. 20 CV 1055, 2023 WL 3004963, at *6 (S.D.N.Y. Mar. 6, 2023) (declining to award a plaintiff statutory damages under the NYLL despite defendant's default because plaintiff "merely state[d] that he was not provided the new hire notice or wage statements" and failed to "assert any other facts describing the injury in fact caused by not receiving these documents"), report and recommendation adopted, 2023 WL 3304723 (S.D.N.Y. May 8, 2023); Neor v. Acacia Network, Inc., No. 22 CV 4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing a complaint's claims under the NYLL wage statement and notice provisions for lack of standing where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

[9] Plaintiff was also informed of the deficiency in his WTPA allegations during the inquest hearing, and he opted not to amend his complaint to include sufficient allegations.  (See ECF No. 21).

only invoke this provision if, within 180 days of the termination of their services, they served on the relevant shareholders a notice of intent to hold them liable.

As noted above, plaintiff sufficiently alleges that he was not paid overtime compensation to which he was entitled.  Plaintiff alleges that he provided the requisite notice to Clark within the 180 day period following his termination.  (Pl.'s Mem. at 12 (citing Compl. ¶ 82; Davis Aff. ¶ 17)).  Accepting those facts as true, the Court concludes that plaintiff is entitled to recover damages for any unpaid overtime wages, or other unpaid wages, from Clark under NYCBL § 630.  The Court therefore recommends that the district court enter default judgment as to liability with respect to plaintiff's NYBCL claim.

E.    NYSHRL and NYCHRL Claims

Plaintiff brings three distinct claims under the NYSHRL and NYCHRL.  For the reasons set forth below, the Court concludes that default judgment as to liability should enter with respect to each.

1.    *Quid Pro Quo* Sexual Harassment

First, plaintiff brings claims for *quid pro quo* sexual harassment under both the NYSHRL and NYCHRL.  (Compl. ¶¶ 84–93, 118–27; see also Pl.'s Mem. at 14–15).  With respect to the NYSHRL, courts in this Circuit apply the Title VII standard, under which a plaintiff states a *prima facie* case if they show that a "tangible employment action," meaning "an explicit alteration in the terms or conditions of employment[,] resulted from [plaintiff's] refusal to submit to a supervisor's sexual advances."  Rivera v. New York City Dep't of Correction, 951 F. Supp. 2d 391, 400 (E.D.N.Y. 2013); see also Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 604 (2d Cir. 2006) (noting that "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," typically constitutes a tangible employment action).

The NYCHRL, however, "does not distinguish *quid pro quo* claims from hostile work environment ones, focusing instead on unequal treatment based on gender." Friederick v. Passfeed, Inc., No. 21 CV 2066, 2022 WL 992798, at *7 (S.D.N.Y. Mar. 31, 2022). Nonetheless, such claims are actionable under the NYCHRL "as long as the plaintiff has received unequal treatment based on [his or] her gender," and allegations that the plaintiff "was treated less well because of a discriminatory intent" will typically suffice to meet that standard. Id.

Here, plaintiff alleges that Clark subjected plaintiff to unwanted sexual conduct, including by making various comments of a sexual nature and forcing plaintiff to touch Clark's buttocks. (Compl. ¶¶ 49–51). Clark repeated this behavior until such time as plaintiff started to avoid that contact, at which point Clark allegedly retaliated against plaintiff by treating him overly critically, assigning him unwanted work outside of his typical duties, and finally terminating him. (Id. ¶¶ 52–59). Clark's adverse treatment towards and ultimate termination of plaintiff constitutes a tangible employment action, and plaintiff alleges that said action occurred as a result of plaintiff's attempts to mitigate Clark's advances. (Compl. ¶¶ 53–55). Furthermore, these allegations indicate that plaintiff was "treated less well because of [Clark's] discriminatory intent" with respect to plaintiff, as required to state a *quid pro quo* claim under the NYCHRL. See Friederick v. Passfeed, Inc., 2022 WL 992798, at *7.

Accepting these allegations as true, the Court concludes that plaintiff has stated a *prima facie* case of *quid pro quo* sexual harassment under both the NYSHRL and NYCHRL. Id. The Court therefore respectfully recommends that default judgment be entered as to liability for said claims.

2.    <u>Hostile Work Environment</u>

Second, plaintiff brings a claim for hostile work environment (*i.e.*, sexual harassment) under both the NYSHRL and NYCHRL.  (Compl. ¶¶ 94–108, 128–37; <u>see also</u> Pl.'s Mem. at 12–14).  Historically, the standard for such claims has differed as between the two statutes. Courts have applied the Title VII standard to NYSHRL claims, requiring plaintiff to allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,"  and to show that "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 320–21 (2d Cir. 2015).  Claims brought under the NYCHRL, are subject to a "similar but more permissive" standard, which omits the "severe or pervasive requirement." <u>Friederick v. Passfeed, Inc.</u>, 2022 WL 992798, at *6.  After recent amendments to state law, however, hostile work environment claims that, as here, accrue after October 19, 2019, are subject to the more permissive standard that previously applied only to NYCHRL claims. <u>Wray v. Westchester Med. Ctr. Advanced Physician Servs., P.C.</u>, No. 21 CV 00394, 2022 WL 3214924, at *10 (S.D.N.Y. Aug. 9, 2022).

Plaintiff's allegations, when accepted as true, satisfy that standard.  Specifically, plaintiff alleges not only that he was regularly subject to verbal abuse in the form of sexual comments, but also that he was touched by and forced to touch Clark in an inappropriate fashion on multiple occasions.  (Compl. ¶¶ 49–51 <u>see also</u> Davis Aff. ¶¶ 19, 22).  Although the instances of discriminatory conduct complained of are not particularly numerous, they nonetheless suffice under the lower standard now applicable to both of plaintiff's claims, particularly in light of the fact that plaintiff only worked for the defendants for a short period of time and that the type of

19

conduct complained of is considered particularly egregious under the law.  Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) (noting that "direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment"). (See also Pl.'s Mem. at 13–14 (collecting cases that reached similar conclusions with respect to instances of touching and sexualized remarks)).

The Court therefore concludes that plaintiff has sufficiently alleged a claim of sexual harassment under both the NYSHRL and NYCHRL, and that default judgment should be entered as to defendants' liability for those claims.

3.    Retaliation

Finally, plaintiff brings a claim for retaliation under the NYSHRL and NYCHRL. (Compl. ¶¶ 109–17, 138–45; see also Pl.'s Mem. at 15–17).  Under state law, plaintiff must plead that: "(1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Wray v. Westchester Med. Ctr. Advanced Physician Servs., P.C., 2022 WL 3214924, at *7 (quoting Mitchell v. State Univ. of New York Upstate Med. Univ., 723 F. App'x 62, 63 (2d Cir. 2018)).  Under New York City law, however, "plaintiff need only show that [he] took an action opposing [his] employer's discrimination, and that as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Friederick v. Passfeed, Inc., 2022 WL 992798, at *11 (S.D.N.Y. Mar. 31, 2022) (quoting Mihalik v. Credit Agricole Cheuvreux North Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013), and N.Y.C. Admin. Code § 8-107(7)).

Courts in this Circuit have reached differing conclusions as to whether "rejecting a harasser's sexual advances constitutes protected activity." Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 85 (E.D.N.Y. 2020) (collecting cases).  The better view, and the view

adopted by "a majority of the courts" to have addressed the issue, is that rejecting a supervisor's advances does in fact constitutes protected activity under both the NYSHRL and NYCHRL.  Id. at 86–87.  Applying that same rule here, the Court concludes that by deliberately avoiding contact with Clark and altering his previously friendly demeanor in an attempt to mitigate future incidents of misconduct, plaintiff was engaged in protected activity in opposition to Clark's unlawful discrimination towards him.

The remainder of the elements are clearly satisfied by the factual allegations already discussed above—plaintiff alleges that Clark was aware that plaintiff was rebuffing him, and that immediately thereafter he began subjecting plaintiff to various forms of material adverse actions, including termination.  (Compl. ¶¶ 53–59).  Accepting those allegations as true, and absent any argument to the contrary by defendants, the Court concludes that plaintiff has adequately alleged claims for retaliation and recommends that the district court enter default judgment as to liability for those claims.

## DAMAGES

Having found that plaintiff is entitled to default judgment as to at least some of his claims, the Court now considers his request for damages.[10]  Plaintiff calculates that, in total, he is entitled to an award of $211,641.71 in unpaid wages, back and front pay, statutory damages, and pre-judgment interest (see Harlow Decl. ¶ 13; Dam. Chart), as well as "a significant award for emotional distress damages," along with whatever punitive damages the Court deems appropriate, and post-judgment interest on the totality of his monetary award, calculated using the federal interest rate (Pl.'s Mem. at 18, 25–27).

---

[10] Since  the Court concludes that plaintiff has not adequately pleaded spread of hours claims or stated an injury in connection with his WTPA claims, the Court does not consider his request for damages with respect to those two claims.

I.    Legal Standard

Once the court determines that default judgment should enter, the plaintiff must still establish his entitlement to the damages sought.  See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  Unlike with the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages.  See Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.

In determining the appropriate measure of damages, the court is permitted to "conduct hearings" or make referrals as necessary. Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989)), report and recommendation adopted, 2018 WL 4119518 (E.D.N.Y. Aug. 29, 2018).

Plaintiff conceded that the damages he seeks "are not a sum certain," and that an inquest hearing was therefore appropriate.  (Harlow Decl. ¶ 12).  This Court held such a hearing on February 8, 2024.  (Minute Entry, dated February 12, 2024).

II.    <u>Analysis</u>

    A.    <u>FLSA, NYLL, and NYBCL Claims</u>

Plaintiff seeks, in connection with his claims under the FLSA, NYLL, and NYBCL, damages in the form of unpaid overtime compensation, liquidated damages, and pre-judgment interest.  (Pl.'s Mem. at 22).  For the reasons set forth below, this Court is unable to meaningfully assess plaintiff's request for damages at this time, and therefore recommends dismissal without prejudice as to this aspect of plaintiff's Motion.

Plaintiff's Complaint states that for the first two months of his employment—which lasted approximately ten months in total, from August 2021 to June 3, 2022 (Compl. ¶¶ 22, 30)—he regularly worked upwards of 70 hours per week, and thereafter worked approximately 45 to 50 hours per week.  (<u>Id.</u> ¶ 34).  In plaintiff's Affidavit, however, he indicates that from August 2021 to April 2022, he was working roughly 70 hours per week, or between 26 and 30 hours of overtime per week.  (<u>See</u> Davis Aff. ¶¶ 10, 14).  Plaintiff's Affidavit then states that for the remaining months—between April 2022 and June 2022, he regularly worked four or more hours of overtime per week.  (<u>Id.</u> ¶ 14).  Plaintiff's Affidavit thus estimates a significantly larger total number of overtime hours than is alleged in the Complaint.  Plaintiff's Damages Chart includes even larger totals of overtime hours.

Unlike with liability, courts assessing damages on a motion for default judgment cannot simply accept as true the allegations in the complaint.  <u>See</u> <u>Flaks v. Koegel</u>, 504 F.2d at 707. Rather, courts regularly rely on the written and/or oral testimony of the plaintiff(s) and their counsel to make a factual finding with respect to the appropriate quantum of damages.  Given the inconsistencies noted above, and the significant departure from the allegations in the Complaint, the Court is simply unable to make a determination as to the amount of overtime plaintiff worked based on plaintiff's Affidavit.  Given that the amount of overtime alleged in the Complaint is

23

based on two months of 70 hours per week, as opposed to plaintiff's Affidavit, which asserts that for eight months he worked 70 hours per week, the Court is required to disregard plaintiff's factual assertions regarding the quantum of overtime payments to which he is entitled.  Fed. R. Civ. P. 54(d) (stating that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").  Without considering that information, the Court is left with only the allegations in the Complaint, which, without more, are not a sufficient basis upon which to recommend damages in connection with plaintiff's FLSA, NYLL, and NYBCL claims.  Thus, the Court respectfully recommends that plaintiff's Motion be denied without prejudice as to damages for the aforementioned claims, and that plaintiff be given leave to renew that aspect of his Motion, subject to his providing further evidence as to his damages.[11]

B.    NYSHRL and NYCHRL Claims

Plaintiff also seeks back pay, front pay, pre-judgment interest, emotional distress damages, and punitive damages in connection with his claims under the NYSHRL and NYCHRL.  (Pl.'s Mem. at 22–27).

Within the Second Circuit, requests for emotional distress damages are "generally . . . grouped into three categories of claims: 'garden-variety,' 'significant' and 'egregious.'"  Olsen v. Cnty. of Nassau, 615 F. Supp. 3d 35, 46 (E.D.N.Y. 2009) (quoting Khan v. HIP Centralized Lab Servs., Inc., No. 03 CV 2411, 2008 WL 4283348, at *10 (E.D.N.Y. Sept. 17, 2008)).  In "garden-variety" cases, where "evidence of mental suffering is generally limited to the testimony of the plaintiff" and there are no "extraordinary circumstances," damages generally run from

---

[11] Plaintiff and his counsel are advised that, consistent with Rule 54(d), any factual allegations made in support of a renewed motion for default judgment as to damages may not exceed in amount the allegations and demands in the Complaint.  To the extent plaintiff has determined that the allegations in the Complaint that go to damages are not accurate, such that he and/or his counsel cannot truthfully make factual declarations consistent therewith, he should amend his Complaint.  See Fed. R. Civ. P. 11(b).

around $5,000 to $35,000.  <u>Drice v. My Merch. Servs., LLC</u>, No. 15 CV 395, 2016 WL

1266866, at *7 (E.D.N.Y. Mar. 4, 2016) (citing cases), <u>report and recommendation adopted</u>,

2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016).  So-called "significant" emotional distress claims,

which are "based on more substantial harm or more offensive conduct" and "are sometimes

supported by medical testimony and evidence" and/or "testimony from other, corroborating

witnesses," have previously resulted in awards ranging from $50,000 to $100,000.  <u>Id.</u>  Only in

the context of "egregious" emotional distress claims, where the conduct complained of "was

outrageous and shocking or where the physical health of plaintiff was significantly affected"

have courts upheld awards in excess of $100,000.  <u>Id.</u>

Plaintiff seeks an award of at least six figures in emotional distress damages, arguing that

what plaintiff has suffered here goes beyond mere garden-variety claims of emotional distress.

(Pl.'s Mem. at 26).  Plaintiff has provided some support for his contention that defendants'

actions caused him significant emotional distress. Specifically, he asserts that: (1)  he suffers

from depression and anxiety due to defendants' conduct (Davis Aff. ¶¶ 24-25, 31); (2)

defendants made him feel sexualized and uncomfortable in the workplace (<u>id.</u> ¶¶ 19, 26); and (3)

defendants' conduct had a particularly acute impact on him because he was victim of sexual

abuse when he was younger (<u>id.</u> ¶ 23).  During the inquest hearing, the Court advised plaintiff

that while these assertions likely supported an award of garden-variety emotional distress

damages, they did not suffice to place plaintiff in the "significant emotional distress" category,

let alone support an award in the six-figure range, as requested.  (<u>See</u> Minute Entry, dated

February 12, 2024).

Rather than concede that a lower damages award was appropriate, plaintiff requested

additional time to provide supplemental proof of his emotional distress damages.  (<u>See</u> ECF No.

21).  In light of that request, and in light of the issues noted above with respect to plaintiff's request for damages based on plaintiff's NYSHRL and NYCHRL claims, the Court respectfully recommends that the district court deny plaintiff's Motion as to all of the requested damages for those claims without prejudice.  The Court further recommends that plaintiff be granted leave to renew his Motion as to all such damages with additional evidence in support of plaintiff's alleged emotional distress.

<u>ATTORNEY'S FEES AND COSTS</u>

Plaintiff also seeks an award of attorney's fees and costs.  (Pl.'s Mem. 28–30).  Given the Court's recommendation as to damages and the resulting likelihood that plaintiff's counsel will expend additional time on this matter, the Court respectfully recommends that the district court deny plaintiff's Motion as to attorney's fees and costs, without prejudice and with leave to renew at a later date.

<u>CONCLUSION</u>

In light of the above, the Court respectfully recommends that the district court: (1) grant the Motion with respect to liability for plaintiff's overtime wage claims, NYBCL personal liability claim, NYSHRL claims, and NYCHRL claims; (2) deny the Motion with respect to liability for plaintiff's spread-of-hours claims, wage statement claims, and wage notice claims; and (3) deny the Motion with respect to all damages, without prejudice and with leave to renew.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to serve this Report and Recommendation on the defendants and file proof of service on the docket immediately thereafter.

**SO ORDERED.**

Dated: Brooklyn, New York
March 1, 2024

_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York